UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
AT LEXINGTON

| | |
|---|---|
| K2 HOLDINGS, LLC, | |
| Plaintiff, | CIVIL NO. 5:16-cv-134-KKC |
| V. | |
| NEW CINGULAR WIRELESS, PCS, LLC, and CROWN CASTLE PT, INC., | ORDER & OPINION |
| Defendants. | |

\*\*\* \*\*\* \*\*\*

When a plaintiff moves to remand a case—one originally brought in state court but removed to federal court—for lack of subject matter jurisdiction, it is the defendant's burden to keep the case in federal court. *Gafford v. Gen. Elec. Co.*, 997 F.2d 150, 155 (6th Cir. 1993), *abrogated on other grounds by Hertz Corp. v. Friend*, 130 S. Ct. 1181 (2010). Because Defendants New Cingular Wireless PCS, LLC and Crown Castle PT, Inc. have failed to prove by a preponderance of the evidence that the amount in controversy in this case exceeds $75,000, they have not satisfied that burden. The Court will therefore **GRANT** K2 Holdings, LLC's motion (DE 10) to remand.

I.

On September 9, 2010, K2 Holdings purchased real property now known as 2600 and 2602 Gribbin Drive ("Property") in Lexington, Kentucky at a Master Commissioner's sale. (Compl. ¶ 6). Fourteen years before, the original owners ("Grantors") of the Property—Town and Country Rentals, Inc., Moneywatch Richmond Road Investors, Inc., J. Jeffrey Scates, and Theresa Scates—entered into a Memorandum of Option and Lease Agreement with BellSouth Mobility, Inc. (Compl. ¶ 7), leasing a 1,600 square foot portion of the Property ("Tower Site") together with a Right of Way—a non-exclusive, twenty-foot access and utility

easement. Collectively this is known as 2602 Gribbin Drive, Lexington, Kentucky (collectively, "Leased Property"). (Compl. ¶ 7-8).

Throughout the years, this 1996 Lease Agreement was added to and amended, and it exchanged hands through various successors in interest. On June 2, 1999, BellSouth entered into a Site Designation Supplement and Memorandum of Sublease with Crown Castle South, Inc. to sublease the Leased Property. (Compl. ¶ 9). Months later, on May 9, 2000, the Grantors entered into a Declaration of Easement and an Addendum of Declaration of Easement with Crown Communications, granting Crown Communications a perpetual right to exclusively use the Leased Property, subject to BellSouth's rights under the 1996 Agreement. (Compl. ¶ 10). That 2000 Easement described the Right of Way as allowing

> for ingress and egress, seven (7) days per weeks, 24 hours per day, on foot or vehicle, including trucks, and for the installation and maintenance of utilities, wires, poles, cables, conduits and pipers over, under or along a 20 feet wide Right of Way across the Property extending from the nearest public right of way to the [Leased Property].

(Compl. ¶ 13, Ex. 3 and 4).

The next year, Crown Communications, Inc. entered into an Assignment of Perpetual Easement with Cingular Real Estate Holdings of Georgia, LLC, which assigned all of Crown Communications, Inc.'s rights under the May 2000 Easement to Cingular of Georgia. (Compl. ¶ 16, Ex. 6). In June 2001, BellSouth Mobility, a successor in interest to BellSouth, and Cingular of Georgia entered into an Amended and Restated Site Designation Supplement and Memorandum of Lease with Crown Castle South, Inc., a subsidiary of Crown Communications, Inc., making Cingular of Georgia a party to the Crown Castle Sublease. (Compl. ¶ 18, Ex. 7).

On March 19, 2004, the Grantors, now comprised of only Town and Country Rentals, Inc. and Moneywatch Richmond Road Investors, Inc., (Compl ¶ 20), conveyed the Property to

Nuti Builders, Inc. (Compl. ¶ 21), who entered into an Amendment to Declaration of Easement, Addendum of Declaration of Easement, and Memorandum of Easement with Cingular Real Estate Holdings of the Southeast, LLC (a successor by merger with Cingular of Georgia) in 2006. (Compl. ¶ 22). Nuti Builders and Cingular Southeast agreed to amend the May 2000 Easement to relocate the right of way included in the easement so that it "basically follows the driveway of the building back to the Tower Site." (Compl. ¶ 23). K2 Holdings bought the Property subject to these agreements.

Defendant New Cingular is a successor, by merger to BellSouth and to Cingular Southeast, to the Leased Property (Compl. ¶ 23) and is subject to the various agreements made by its predecessors in interest, including a perpetual easement for the exclusive use of a 40' x 40' area and a non-exclusive use of the Right of Way for access. New Cingular and Crown Castle PT, "or their predecessors in interest," erected a cellular phone tower on the Property, purportedly on the Tower Site. (Compl. ¶ 32). The 2006 Amendment to Easement showed the Tower Site to be located "about four-fifths down" the lot from Gribbin Drive. (Compl. ¶ 36).

But, as is true with all things related to real property, location is everything. On October 31, 2014, Anthony Mandak, a real estate specialist for Crown Castle PT, sent K2 Holdings an email claiming that the 2006 Agreement, which relocated the Right of Way in the easement, "included an incorrect legal description'" for the cell phone tower located on the Property. (Compl. ¶ 38). This incorrect location, according to Mandak, showed "[the defendant's] lease area being in the middle of the road leading to your parking lot in the back of your building." (Compl. ¶ 40). Mandak sent K2 Holdings a letter reiterating that the "previous legal description and survey defined our easement area incorrectly at the site." (Compl. ¶ 41). Mandak attached to the letter a proposed Second Amendment to Declaration of Easement, Addendum to Declaration of Easement, and Memorandum of Interest which

3

sought to relocate the easement area. The same letter also included a November 5, 2014 survey of the Property, which according to K2 Holdings, showed that the cell phone tower was actually located "at the end of the lot from Gribbin Drive." (Compl. ¶ 43).

Kevin Balcirak, the sole member of K2 Holdings, responded with a letter of his own, asserting that Crown Castle PT or its predecessors in interest "had actually constructed the cell phone tower in an incorrect location on the Property" (Compl. ¶ 45) behind the defined easement area and outside the permitted area.

K2 Holdings filed suit in Fayette County Circuit Court to resolve this property dispute. K2 Holdings alleges five causes of action: (1) a declaration of rights pursuant to KRS 418.040 regarding the alleged trespass; (2) a breach of the 2001 memorandum of easement; (3) a breach of the 2006 memorandum of easement; (4) unjust enrichment; and (5) harassment. K2 Holdings seeks injunctive relief, a declaration of rights, as well as monetary damages.

On May 3, 2016, New Cingular and Crown Castle PT removed this action pursuant to 28 U.S.C. §§ 1441, 1446, stating that this Court has jurisdiction under 28 U.S.C. § 1332 because the citizenship of the parties is diverse and the amount in controversy is satisfied by combining K2 Holdings' claims for compensatory damages and injunctive relief. (DE 1).

K2 Holdings timely filed a motion to remand the case back to Fayette County Circuit Court, arguing that the amount in controversy is not supported by a preponderance of the evidence. (DE 10).

II.

A case may be removed to federal court only if it is one over which the federal court could exercise original jurisdiction. *See* 28 U.S.C. §§ 1441, 1446. One such exercise of federal jurisdiction is based on diversity jurisdiction. This Court has original jurisdiction to hear causes of action where the matter in controversy exceeds $75,000 and is between citizens of

4

different states or between citizens of a State and citizens or subjects of a foreign state. 28 U.S.C. § 1332(a)(1)-(2). To invoke jurisdiction there must be "complete diversity" between the parties, meaning that no plaintiff may be a citizen of the same state of which any defendant is a citizen. *See* 28 U.S.C. § 1332; *Glancy v. Taubman Ctrs., Inc.*, 373 F.3d 656, 664 (6th Cir. 2004) (citing *Caterpillar Inc. v. Lewis*, 519 U.S. 61, 68 (1996)); *Citizens Bank v. Plasticware, LLC*, 830 F. Supp. 2d 321, 325 (E.D. Ky. 2011).

Federal jurisdiction in a diversity case is determined at the time of removal. *Rogers v. Wal–Mart Stores, Inc.*, 230 F.3d 868, 871 (6th Cir. 2000). The burden of proving that a court retains subject matter jurisdiction over a case falls on the defendant. *See Everett v. Verizon Wireless, Inc.*, 460 F.3d 818, 829 (6th Cir. 2006); *King v. Household Fin. Corp. II*, 593 F.Supp.2d 958, 959 (E.D. Ky. 2009). Because federal courts are courts of limited jurisdiction, any doubts regarding federal jurisdiction are to be construed in favor of remanding the case to state court. *Everett*, 460 F.3d at 829; *Tankersley v. Martinrea Heavy Stampings, Inc.*, 33 F. Supp. 775, 777 (E.D. Ky. 2014).

A further layer applies here. The Kentucky Rules of Civil Procedure both prohibit plaintiffs from specifying the amount in damages they seek to recover and allow plaintiffs to recover more in damages than what they seek in their complaints. *See* Ky. R. Civ. P. 8.01(2) ("In any action for unliquidated damages the prayer for damages in any pleading shall not recite any sum as alleged damages other than an allegation that damages are in excess of any minimum dollar amount necessary to establish the jurisdiction of the court . . ."); Ky. R. Civ. P. 54.03 ("[E]very final judgment shall grant the relief to which the party in whose favor it is rendered is entitled, even if the party has not demanded such relief in his pleadings."). Thus, in cases like this, removal is only appropriate if "the district court finds by the preponderance of the evidence that the amount in controversy exceeds the amount specified

5

in section 1332(a)." *Tankersley*, 33 F. Supp. at 777. The preponderance-of-the-evidence test requires the defendants to support their claim to jurisdiction by producing "competent proof" of the necessary "jurisdictional facts." *Walker v. ProNational Ins. Co.*, No. 12-cv-100, 2012 WL 6060368, at *2 (E.D. Ky. Dec. 5, 2012) (citing *Gafford*, 997 F.2d at 160). Without affirmative proof, the case must be remanded.

### III.

The sole issue to be decided in the present motion is whether the amount in controversy requirement has been satisfied. New Cingular and Crown Castle PT contend that the amount in controversy is satisfied because K2 Holdings has requested declaratory and injunctive relief that, in combination with monetary damages, far exceeds the $75,000 threshold. Despite the defendants' arguments, the Court concludes that they have failed to satisfy their burden of establishing by a preponderance of the evidence that the amount in controversy exceeds $75,000.

### A.

In Count I, K2 Holdings seeks a declaration of rights and injunctive relief to alleviate an alleged trespass caused by a misplaced cellular tower on its property outside of the easement area. When a party seeks declaratory or injunctive relief, it is well-settled that "the amount in controversy is measured by the value of the object of the litigation." *Cleveland Hous. Renewal Project v. Deutsche Bank Tr. Co.*, 621 F.3d 554, 560 (6th Cir. 2010) (quoting *Hunt v. Wash. State Apple Advert. Comm'n*, 432 U.S. 333, 347 (1977)).

Defendants New Cingular and Crown Castle PT argue that "[t]he value of Defendants' interests in the property in question and their continued and uninterrupted operation of their communications facilities on that property" and "the relief sought by K2 Holdings, including but not limited to the demolition and removal of a cellular telecommunication tower, would cause significant loss to Defendants" that would exceed the jurisdictional

requirement for removal. (DE 1, Page ID # 5). To prove that point, New Cingular and Crown Castle PT offer the declaration of Jeremy Ford, a Senior Technical Project Manager at AT&T Mobility, who avers that the cost of dismantling and removing the cellphone tower and all of its parts would cost the defendants in excess of $100,000. (DE 13-2, at 2).

In addressing the merits of this argument, however, the Court must make a threshold inquiry. The defendants' assertion that it is *their* interests and *their* potential of loss that this Court should consider in determining the amount in controversy propels this case headlong into a question that has not been answered in this Circuit: from which party's perspective is this Court to evaluate the value of the injunctive relief?

"[T]here is a circuit split as to whether a court may determine the amount in controversy from the perspective of either party (the 'either viewpoint rule') or whether a court may only consider the plaintiff's viewpoint." *Everett*, 460 F.3d at 829 (internal quotation marks omitted) (quoting *Olden v. LaFarge Corp.*, 383 F.3d 495, 503 n.1 (6th Cir. 2004)). "The Sixth Circuit has not yet resolved whether it 'view[s] the amount in controversy from the perspective of the plaintiff or the defendant.'" *Northup Props., Inc. v. Chesapeake Appalachia, LLC*, 567 F.3d 767, 770 n.1 (6th Cir. 2009)). Nonetheless, the Sixth Circuit has stated that "[i]t is generally agreed . . . that the amount in controversy should be determined from the perspective of the plaintiff, with a focus on the economic value of the rights he seeks to protect." *Smith v. Nationwide Prop. & Cas. Ins. Co.*, 505 F.3d 401, 407 (6th Cir. 2007) (quoting *Woodmen of the World/Omaha Woodmen Life Ins. Soc'y v. Scarbro*, 129 F. App'x 194, 195–96 (6th Cir. 2005).

New Cingular and Crown Castle PT cite two cases, *Everett v. Verizon Wireless, Inc.*, 460 F.3d 818, 829 (6th Cir 2006), and *Cleveland Housing Renewal Project v. Deutsche Bank Trust Co.*, 621 F.3d 554, 560 (6th Cir. 2010), to support the general proposition that, in theory,

7

the "property-rights valuation perspective . . . is [] not the only way to approach determining the value of the non-monetary relief requested." (DE 13, at 3) (emphasis in original). However, the defendants do not cite how the present case is one that necessitates deviation from the general rule. In *Cleveland Housing*, for example, while acknowledging that the value of injunctive relief is difficult to quantify, the Court of Appeals for the Sixth Circuit concluded that "the notion that abatement of nuisances on twenty-five parcels of abandoned property would amount to improvement valued at less than $75,000 [was] patently suspect." 621 F.3d at 560. Thus, without deciding the issue, the court found that the amount in controversy was satisfied, in part, because even if "the value of the requested injunctive relief . . . [was] difficult to quantify," it was a case where the amount in controversy was without question satisfied. *Id.* at 560. This case is not so clear so as to satisfy the amount of controversy on the face of the complaint.

Additionally, the only case from this District mentioned by either party that expressly adopted the "defendant viewpoint" approach, *Petrey v. K. Petroleum, Inc.*, No. 07-cv-168, 2007 WL 2068597, at *3 (E.D. Ky. July 16, 2007), is distinguishable from the present case. The plaintiff in *Petrey* sought a declaration of superior title to certain real property upon which the defendant intended to produce natural gas. As the Court of Appeals for the First Circuit explained, in the only case to discuss *Petrey*, the circumstances faced in *Petrey* were "not as straightforward as it would be in an action for the recovery of specific property or monies . . . ." *CE Design Ltd. V. American Economy Ins. Co.*, 755 F.3d 39, 48 (1st Cir. 2014).

While the amount in controversy is easily satisfied from the defendants' perspective—by totaling the cost for destroying and replacing the tower structure—the Court is not persuaded that this case presents similar circumstances to those in *Petrey* to justify following that rule. Therefore, with no reason to deviate from the language in *Smith*, the Court will

8

determine the amount in controversy from the prospective of K2 Holdings. *See, e.g.*, *Houchens v. Gov't Employees Ins. Co.*, No. 3:13-cv-214, 2013 WL 5740131, at *2 (W.D. Ky. Oct. 22, 2013); *Glass v. Steinberg*, No. 3:09–cv–355, 2010 WL 6592935, at *1 (W.D. Ky. Jan. 15, 2010).

In this case, K2 Holdings' claim is one of trespass where the value of real property, or a part of real property, can be more easily valued. From K2 Holdings' perspective, the object of the litigation is the amount of the right to be protected or the extent of the injury to be prevented. In determining the jurisdictional amount in an action to prevent a continuing trespass on one's land, "it is only the value to the part of land that will be destroyed without the injunction that is considered; the total value of the property is measured only if the entire value of plaintiff's property will be protected by the injunction." *James Neff Kramper Family Farm P'ship v. IBP, Inc.*, 393 F.3d 828, 833 (8th Cir. 2005); *Colony Coal & Coke Corp. v. Napier*, 28 F. Supp. 76, 78–79 (E.D. Ky. 1939); s*ee also* 14AA Charles Alan Wright, et. al., Fed. Prac. & Proc. § 3702.5 (4th ed.) ("[I]f the trespass will diminish only a portion of the value of the plaintiff's property, the amount in controversy is only the decrease in the value of the land.").

K2 Holdings avers that the total value of the 40' x 40' property is $65,000, without the added value of any improvements from the tower. (DE 10, Ex. 1). If $65,000 is the value of the entire parcel without any added value, the value of a portion of parcel that is allegedly encumbered by the trespassing tower must be less than the total amount of the parcel. New Cingular and Crown Castle PT do not proffer what that less-than-whole amount is. Even more so, New Cingular and Crown Castle PT fail to put forth any evidence of what the dollar amount of the decrease in the value of land would be. Regardless of the amount, it is not plainly in excess of $75,000.

New Cingular and Crown Castle PT argue that the $65,000-property-valuation is improper because it "ignores the value put on the landowner's giving up the right not to have

9

a tower on a 40' x 40' parcel on the property [in the May 2000 Easement]" and "the value of having a 40' x 40' parcel of land rid of a tower and associated access use." (DE 13, at 3). That value, according to the defendants, is priced at $95,000—the consideration K2 Holdings paid to give up its exclusive use of the 40' x 40' area and right of way for access. (DE 13, Ex. A). But framing the value this way sets up a false premise. At issue is not the value of the entire easement, or whether or not the defendants will lose their right to the $95,000 easement, or the easement itself. This alleged trespass does not concern the defendants' easement. At issue is that the defendants are allegedly trespassing on an area *outside* of the easement. Mandak's letter makes this clear. Mandak requested in his letter to K2 Holdings that the easement be amended to include the area in which the tower was located. (Compl. ¶ 44). If K2 Holdings had hypothetically paid $95,000 in consideration for that area and then sued to enjoin the trespass, the consideration amount for the additional land would be relevant to valuating the object of the litigation. But here, the complaint alleges that K2 Holdings did not give up its exclusive rights to the area on which there is a trespass. K2 Holdings sued to properly demarcate the property. The $95,000 in consideration for the easement has no impact in the valuation of the property on which K2 Holdings seeks quiet enjoyment.

New Cingular and Crown Castle PT have not offered evidence as to what the value of that part of land would be unclouded by trespass. Even taking the value of the entire property, which the defendants say is $1,051,000, there are no facts or circumstances disclosed that indicate the value of the particular rights constituting the matter in controversy—the right of the land to be free from trespass—are the same or equivalent to the value of the land in its entirety. Proof of the price of land as a whole is insufficient to prove the value of the right that K2 Holdings seeks to protect because the amount in controversy here as a matter of law is less than the value of the entire land. New Cingular and Crown Castle PT have offered nothing by way of evidence to value the portion of the property on

10

which the tower allegedly trespasses or what the value of the tower-less property would be or how the decrease in the value of land exceeds the requisite amount in controversy. Without evidence showing how the particular rights at issue meet or exceed the necessary jurisdictional amount, the defendants do not meet their burden to establish jurisdiction based solely on plaintiff's claim for injunctive and declaratory relief.

B.

K2 Holdings' claims for injunctive and declaratory relief do not stand in isolation. Included in the calculation of the amount in controversy are K2 Holdings' claims for monetary damages arising from breach of easement, harassment, and unjust enrichment. But New Cingular and Crown Castle PT do not provide any evidence for how these compensatory damages, when combined with the claim for injunctive relief, somehow exceed the jurisdictional amount. The defendants argue that even if the value for the injunctive relief is $65,000, K2 Holdings still "effectively values at <u>$0</u> all of the <u>monetary</u> claims made in the Petition." (DE 13, at 4) (emphasis in original). But to say so is not the same as offering evidence of what those claims might be worth. Restating the pleadings—particularly when those pleadings do not (and cannot) seek specific damages—is not sufficient to establish "competent proof" that the amount in controversy is met. *Cleveland Hous. Renewal Project*, 621 F.3d at 559. Nor is K2 Holdings' failure to stipulate damages sufficient to confer diversity jurisdiction. *Lemaster v. Bob Evans Farms, LLC*, No. 15-cv-50, 2015 WL 4987890, at *2 (E.D. Ky. Aug. 19, 2015). The amount in controversy is not established without more than these mere averments.

IV.

As the removing parties, New Cingular and Crown Castle PT have the burden of producing evidence of the amount in controversy, not K2 Holdings. *See Gafford*, 997 F.2d at 158. The amount in controversy has not been established, and therefore this Court cannot

properly exercise jurisdiction over this matter. This case will be remanded to Fayette County Circuit Court.

Accordingly, **IT IS HEREBY ORDERED**:

(1) that Plaintiff's Motion to Remand (DE 10) is **GRANTED**;

(2) that this matter is hereby **REMANDED** to the Fayette County Circuit Court;

(3) that the defendants' motion to substitute a party defendant (DE 7) is **DENIED** as **MOOT**; and

(4) that this case is **STRICKEN FROM THE COURT'S ACTIVE DOCKET**.

Dated March 27, 2017.

KAREN K. CALDWELL, CHIEF JUDGE
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY